**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DANSHIR, LLC, and DANSHIR PROPERTY MANAGEMENT, LLC, individually, and on behalf of all others similarly situated, | ) ) ) ) ) | Case No.: 1:21-cv-01158 |
| Plaintiffs, | ) ) | Hon. Rebecca R. Pallmeyer |
| v. | ) ) | |
| GREATER NEW YORK MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, AND SCHEDULING A FINAL APPROVAL HEARING**

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................... 1

II.    BACKGROUND AND PROCEDURAL HISTORY ................................................ 2

    A.  This Lawsuit And Illinois Law Concerning Labor Depreciation ................................. 2

    B.  Settlement Negotiations .................................................................................... 4

III.   SUMMARY OF SETTLEMENT TERMS ............................................................. 5

    A.  The Class .......................................................................................................... 5

    B.  Class Members' Recovery Under The Settlement ......................................... 6

    C.  Disputes And Neutral Evaluator .................................................................... 6

    D.  The Release Of Claims .................................................................................... 7

    E.  Attorneys' Fees, Costs, And A Service Award ............................................. 7

    F.  The Class Notice And Claims Administration ............................................... 7

IV.   THE SETTLEMENT CLASS IS CERTIFIABLE UNDER FED. R. CIV. P. 23 ............. 8

    A.  The Settlement Meets The Requirements Of Rule 23(a) ........................... 10

        1.  *Numerosity* ........................................................................................ 10

        2.  *Commonality* ..................................................................................... 10

        3.  *Typicality* ........................................................................................... 13

        4.  *Adequacy* ........................................................................................... 13

    B.  The Settlement Meets The Requirements Of Rule 23(b) ........................... 14

        *1.  Predominance* ................................................................................... 15

        *2.  Superiority* ......................................................................................... 16

V.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL ...................................... 16

    A.  The Court Should Grant Preliminary Approval Because The Settlement Satisfies The Requirements Of Rule 23 And Applicable Precedent ........................... 16

B. The Settlement Achieves An Excellent Result For The Class.....................................18

    *1. The Adequacy Of Representation* .......................................................................18

    *2. The Settlement Was Negotiated At Arm's Length*..............................................18

    *3. The Relief Provided To The Class is Outstanding*..............................................19

        *a. The Complexity, Expense And Likely Duration Of The Litigation* ..............19

        *b. Class Members Have A Simple Way To Receive Relief From The Settlement* ..........................................................................................20

        *c. The Stage Of The Proceedings* ....................................................................21

        *d. The Strength Of Plaintiffs' Case And The Value Of The Settlement* ............21

        *e. The Opinions Of Class Counsel And The Class Representatives, And The Reaction of Class Members*.............................................................22

C. Plaintiffs' Forthcoming Motion Requesting Attorneys' Fees, Costs And Service Awards Falls Within The Range Of Reasonableness Sufficient To Allow Preliminary Approval And Notice To The Class ....................................................22

CONCLUSION ....................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Amchem Products, Inc. v. Windsor,* 521 U.S. 591 (1997)....................................................8, 14, 16

*Am. Int'l Group, Inc. v. ACA INA Holdings, Inc.*, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012) ....18

*Arnold v. State Farm Fire & Cas. Co.*,
    No. 17-00148, 2020 WL 6879271 (S.D. Ala. Nov. 23, 2020)...................................*passim*

*Bailey v. AK Steel Corp.*, No. 1:06-468, 2008 WL 553764 (S.D. Ohio Feb. 28, 2008) ...............24

*Bennett v. Behring Corp.*, 737 F.2d. 982 (11th Cir. 1984) ...........................................................21

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) .........................................................................24

*Castillo v. Noodles & Co.*, 2016 WL 7451626 (N.D. Ill. Dec. 23, 2016)......................................25

*Cole v. Collier*, 2018 WL 2766028 (S.D. Tex. June 8, 2018)........................................................25

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ........................................................................19

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007) .....................................................25

*Farmers Union Mut. Ins. Co. v. Robertson*, 370 S.W.3d 179 (Ark. 2010) ..............................9, 12

*Gascho v. Global Fitness Holdings, LLC,* 822 F.3d 269 (6th Cir. 2016) .....................................24

*Green v. Am. Modern Home Ins. Co.,* No. 4:14-04074 (W.D. Ark. Aug. 24, 2016)......................9

*Heard v. Becton, Dickinson & Co.*, 524 F. Supp.3d 831 (N.D. Ill. 2021) (Pallmeyer, J.) .............14

*Hicks v. State Farm Fire and Cas. Co.*, 2019 WL 846044 (E.D. Ky. Feb. 21, 2019) ............*passim*

*Hicks v. State Farm Fire and Cas. Co.*, 965 F.3d 452 (6th Cir. July 10, 2020)........................9, 11

*In re Blue Cross Blue Shield Antitrust Litig.*, 2020 WL 8256366 (N.D. Ala. Nov. 30, 2020)......21

*In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011) .......................22

*In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219 (2d Cir. 2006)..........................................12

*In re Navistar MaxxForce Engines Mktg., Sales Practices and Prods. Liab. Litig.*,
    2020 WL 2477955 (N.D. Ill. Jan. 21, 2020) ...................................................................19

*In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968 (8th Cir. 2018)...................24

*In re TikTok, Inc. Consumer Privacy Litig.*,
    --F.Supp.3d--, 2022 WL 2982782 (N.D. Ill. July 28, 2022) ...............................21

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013)........................................................................9

*Ivery v. RMH Franchise Corp.*, 2019 WL 13256098 (N.D. Ill. July 10, 2019)...........................21

*Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185 (N.D. Ill. 2018).....................................................23

*Manners v. Am. Gen. Life Ins. Co.*,
    No. 3-98-0266, 1999 WL 33581944 (M.D. Tenn. Aug. 11, 1999) ...................................24

*McCain v. Baldwin Mut. Ins. Co.*,
    No. 2010-901266 (Montgomery Cty., Ala., Oct. 18, 2016)................................................9

*McCain v. Baldwin Mut. Ins. Co.*, 260 So.3d 801 (Ala. 2018).......................................................9

*McDaniel v. Quest Commc'ns Corp.*,
    2011 WL 13257337 (N.D. Ill. Aug. 29, 2011) (Pallmeyer, J.) ...........................................1

*McLaughlin v. Fire Ins. Exchange*, No. 1316-CV11140 (Jackson Cty., Mo. July 12, 2017) ..........9

*Mitchell v. State Farm Fire & Cas. Co.*, 327 F.R.D. 552 (N.D. Miss. 2018) ........................ 11, 13

*Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700 (5th Cir. 2020) ................................*passim*

*Mitchell v. State Farm Fire & Cas. Co.*, No. 17-00170-MPM-RP (N.D. Miss. Feb. 25, 2021)....25

*Morgan v. Public Storage*, 301 F. Supp. 3d 1237 (S.D. Fla. 2016) ...............................................21

*Mulvania v. Sheriff of Rock Island County*, 850 F.3d 849 (7th Cir. 2017) ...................................10

*Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006) ..............................................................13

*Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560 (N.D. Ill. 2011) ........................................20, 22

*Shurland v. Bacci Cafe & Pizzeria on Ognden, Inc.*,
    259 F.R.D. 151 (N.D. Ill. 2009) (Pallmeyer, J.) .......................................................13, 14

*Sorensen v. CHT Corp.*, 2004 WL 442638 (N.D. Ill. Mar. 10, 2004) (Pallmeyer, J.) ..................10

*Sproull v. State Farm Fire and Casualty Company,* 172 N.E.3d 1186 (Ill. App. Ct. 2020) ...........2

*Sproull v. State Farm Fire and Cas. Co.*, 184 N.E.3d 203 (Ill. 2021) ....................................*passim*

*Stuart v. State Farm Fire & Cas. Co.,* 910 F.3d 371 (8th Cir. 2018)......................................*passim*

*Stuart v. State Farm Fire & Cas. Co.*, Case No. 4:14-4001 (W.D. Ark.) ......................................20

*T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943 (N.D. Ill. Mar. 25, 2022).........20

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)....................................................9, 10

*Wong v. Accretive Health*, 773 F.3d 859 (7th Cir. 2014). ............................................................17

*Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288 (1st Cir. 2000)........................................12

*Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057 (D. Minn. 2010) ..................................19

*Young v. Rolling the Dough, Inc.*, 2020 WL 969616 (N.D. Ill. Feb. 27, 2020) ............................17

Statutes Rules and Codes

28 U.S.C. 1292(b)........................................................................................................................19

FED. R. CIV. P. 23 ...................................................................................................................*passim*

FED. R. CIV. P. 23(a) ..............................................................................................................*passim*

FED. R. CIV. P. 23(a)(2) ...............................................................................................................10

FED. R. CIV. P. 23(a)(3) ...............................................................................................................13

FED. R. CIV. P. 23(a)(4) ...............................................................................................................13

FED. R. CIV. P. 23(b)(3)........................................................................................................*passim*

FED. R. CIV. P. 23(b)(3)(a)-(d) ....................................................................................................16

FED. R. CIV. P. 23(e) ............................................................................................................*passim*

FED. R. CIV. P. 23(e)(1) ...............................................................................................................16

FED. R. CIV. P. 23(e)(1)(B) ..........................................................................................................17

FED. R. CIV. P. 23(e)(2)...........................................................................................................16, 17

FED. R. CIV. P. 23(e)(2)(C)(ii)......................................................................................................20

F<small>ED</small>. R. C<small>IV</small>. P. 23(e)(2) ...........................................................................................1, 17

F<small>ED</small>. R. C<small>IV</small>. P. 23(f) ...............................................................................................19


Other Authorities

M<small>C</small>L<small>AUGHLIN ON</small> C<small>LASS</small> A<small>CTIONS</small> § 6:24 (18th ed. Oct. 2021 Update) .......................................24

William B. Rubenstein, 4 N<small>EWBERG AND</small> R<small>UBENSTEIN ON</small> C<small>LASS</small> A<small>CTIONS</small> § 3:12
     (6th ed. June 2022 Update)...........................................................................10

William B. Rubenstein, 4 N<small>EWBERG AND</small> R<small>UBENSTEIN ON</small> C<small>LASS</small> A<small>CTIONS</small> § 4:51
     (6th ed. June 2022 Update)...........................................................................12

William B. Rubenstein, 4 N<small>EWBERG AND</small> R<small>UBENSTEIN ON</small> C<small>LASS</small> A<small>CTIONS</small> § 13:12
     (6th ed. June 2022 Update).......................................................................8, 9

William B. Rubenstein, 4 N<small>EWBERG AND</small> R<small>UBENSTEIN ON</small> C<small>LASS</small> A<small>CTIONS</small> § 13:18
     (6th ed. June 2022 Update).....................................................................8, 10

William B. Rubenstein, 4 N<small>EWBERG AND</small> R<small>UBENSTEIN ON</small> C<small>LASS</small> A<small>CTIONS</small> § 13:44
     (6th ed. June 2022 Update)...........................................................................17

Wright and Miller, 7B F<small>EDERAL</small> P<small>RAC</small>. <small>AND</small> P<small>ROC</small>. § 1797.2 (3d ed.) (April 2020 Update)............8

## I. INTRODUCTION

The Settlement Agreement reached between Plaintiffs Danshir LLC and Danshir Property Management, LLC ("Plaintiffs"), on behalf of themselves and the proposed Settlement Class, and Defendant Greater New York Mutual Insurance Company ("GNY") is filed concurrently with this submission.[1]

Plaintiffs respectfully submit this unopposed[2] motion seeking the Court's preliminary approval of this Settlement under FED. R. CIV. P. 23(e) so that notice of the Settlement can be disseminated to the Class and the Final Approval Hearing scheduled. At the Final Approval Hearing, the Court will have additional submissions in support of the Settlement, as well as any objections that may be filed, and will be asked to determine whether, in accordance with FED. R. CIV. P. 23(e)(2) the Settlement "is fair, reasonable, adequate, and in the best interests of Class Members." *McDaniel v. Quest Commc'ns Corp.*, 2011 WL 13257337, at *2 (N.D. Ill. Aug. 29, 2011) (Pallmeyer, J.).

The proposed Settlement here is made on behalf of a class of Illinois GNY commercial lines policyholders. For Settlement Class members who timely submit valid claim forms, and for whom there remains some Nonmaterial Depreciation still withheld from an Actual Cash Value ("ACV") claim payment, their proposed settlement payments will be equal to 100% of the Nonmaterial Depreciation still withheld from their respective ACV payments (or that would have

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Settlement Agreement, filed contemporaneously with this memorandum.

[2] As paragraph 1.14 of the Settlement Agreement makes clear, however, GNY denies each and every allegation of liability, wrongdoing and damages, and believes they have substantial factual and legal defenses to all claims and class allegations relating to this case. Additionally, although GNY does not oppose Plaintiffs' Motion for Preliminary Approval, it does not necessarily agree with all of Plaintiffs' statements contained within their Motion for Preliminary Approval and Memorandum in Support, particularly in regard to Plaintiffs' representations regarding the merits and strength of their class allegations.

1

resulted in an ACV Payment but for the Nonmaterial Depreciation withholding to cause the loss to fall below the deductible). Settlement Agreement ("SA") ¶¶ 4.1.1, 6.4. In addition, Settlement Class members who submit a timely and valid claim will receive 5% interest accruing from the date of the final ACV payment through the date of Final Judgment. *Id.*

As discussed below, the proposed Settlement was reached after extensive arm's-length negotiations and will result in a significant recovery for the Settlement Class. Accordingly, for the reasons set forth in this brief, Plaintiffs submit that the Settlement warrants the Court's preliminary approval and respectfully request that the Court enter the proposed Preliminary Approval Order attached as Exhibit A to the Settlement Agreement.

## II.  BACKGROUND AND PROCEDURAL HISTORY

### A.  This Lawsuit And Illinois Law Concerning Labor Depreciation

Plaintiffs allege that GNY violated Illinois law by breaching the terms of GNY's standard-form property insurance policies with Plaintiffs and other class members by wrongfully depreciating labor costs when adjusting property loss claims.

On July 24, 2020, the Illinois Appellate Court for the Fifth District issued an opinion in *Sproull v. State Farm Fire and Casualty Company,* 172 N.E.3d 1186 (Ill. App. Ct. 2020), addressing the propriety of deducting nonmaterial depreciation from ACV payments when adjusting claims for structural losses.

On October 2, 2020, the defendant in *Sproull* filed a Petition for Leave to Appeal with the Illinois Supreme Court, asking the Supreme Court to review the Illinois Appellate Court's decision in that case. On November 18, 2020, the Illinois Supreme Court accepted the Petition for Leave to Appeal in *Sproull*.

On January 15, 2021, Plaintiffs filed this action against GNY in the Circuit Court of Cook County, Illinois, alleging that GNY improperly deducted nonmaterial depreciation from ACV payments when adjusting claims for structural losses under GNY policies. Plaintiffs asserted claims on behalf of a class of GNY insureds with structural loss claims for breach of contract and declaratory relief. *See generally* Doc. 1-1. GNY timely removed the case to this Court on March 3, 2021. [Doc. 1].

In light of the Illinois Supreme Court accepting the Petition for Leave to Appeal in *Sproull*, the parties moved this Court to stay proceedings. [Doc. 13]. The Court granted the motion and stayed the case pending the Illinois Supreme Court's ruling in *Sproull*. [Doc. 15].

On September 23, 2021, the Illinois Supreme Court issued its ruling in favor of the policyholder-plaintiff, finding that State Farm could not depreciate labor in calculating ACV. The *Sproull* court explained:

> [W]e conclude that plaintiff has offered a reasonable interpretation of 'actual cash value' and 'depreciation.' State Farm has also offered a perfectly reasonable interpretation of the policy. However, because we find the policy is ambiguous and the insured has offered a reasonable interpretation of it, we are required to construe the policy against the insurer. . . .
>
> Where Illinois's insurance regulations provide that the "actual cash value" of an insured, damaged structure is determined as "replacement cost of property at time of loss less depreciation, if any," and the policy does not itself define actual cash value, only the property structure and materials are subject to a reasonable deduction for depreciation, and depreciation may not be applied to the intangible labor component.

*Sproull v. State Farm Fire and Cas. Co.*, 184 N.E.3d 203, 221 (Ill. 2021).

Subsequently, the parties requested that the Court to lift the stay in this case on October 12, 2021. Once the stay was lifted, the parties engaged in informal class-wide discovery. Specifically, GNY produced class-wide data concerning all the property damage claims during the

class period. The data, among other things, identified the amounts of potential labor depreciation withheld from the class members.

**B. Settlement Negotiations**

Prior to settlement negotiations, the parties worked extensively to obtain claims data regarding the potential class members. This process involved obtaining data not only from GNY's internal records, but from the records of multiple independent adjusters.

After the parties obtained the initial claims data regarding the potential class members, the parties agreed to have Hon. Magistrate Judge Stephen C. Williams (Ret.) serve as a private mediator to facilitate settlement discussions. Ex. 1, Declaration of Christopher E. Roberts ("Roberts Decl.") ¶ 19. On August 8, 2022, the parties participated in a full-day mediation session with Judge Williams and made progress toward resolving the case, but were unable to resolve the matter. *Id.* The parties then held a second mediation on September 1, 2022 with Judge Williams. *Id.* The parties were able to reach the essential terms of a settlement during the second mediation. *Id.*

Consistent with the highest ethical standards, and through Judge Williams, the parties negotiated potential attorneys' fees, costs, and a service award only *after* relief to the Class was agreed upon. *See* Roberts Decl. ¶¶ 20-22, 33. Because the service award, fees, and costs of settlement administration will be *paid separately* by GNY and will *not* reduce the recovery to the Class or be subsidized by the same, GNY was incentivized to negotiate and pay for as little fees and litigation expenses as possible. *Id.* at ¶ 22.

The Roberts Declaration, filed concurrently with this Memorandum, confirms the history of settlement negotiations for this lawsuit and the timing and structure of the parties' settlement

negotiations. Roberts Decl. ¶¶ 12-35. The Roberts Declaration also addresses the considerations that led to the compromise in exchange for the proposed release. *Id*. at ¶¶ 36-44.[3]

## III.    SUMMARY OF SETTLEMENT TERMS

### A.  The Class

The "Settlement Class" is defined as:

> All policyholders under any commercial lines property insurance policy issued by GNY who made a covered Structural Loss claim for property located in the State of Illinois during the applicable Class Period, as defined below, and who were issued an ACV payment where Nonmaterial Depreciation was withheld. Settlement Class also includes commercial policyholders for which an ACV would have been made but for the withholding of Nonmaterial Depreciation causing the loss to drop below the deductible.

SA ¶ 2.31. The Class Period is from January 1, 2019 through September 23, 2021, and is determined by the date that payment would have been issued but for the withholding of Nonmaterial Depreciation. *Id.* at ¶ 2.12.

The Settlement Class excludes: (i) policyholders whose claims arose under policy forms, endorsements, or riders expressly permitting Nonmaterial Depreciation within the text of the policy form, endorsement or rider (*i.e.*, by express use of the words "depreciation" and "labor") and any other policy forms, endorsements, or riders expressly permitting Nonmaterial Depreciation; (ii) policyholders who received one or more ACV Payments for claims, but not replacement cost value payments, that exhausted the applicable limits of insurance; (iii) policyholders whose claims were denied or abandoned without ACV Payment; (iv) policyholders other than the class representatives whose claims are currently, or were previously litigated by or against GNY in Illinois state or federal court; (v) policyholders whose claims have been fully

---

[3] *See also* the Declaration of T. Joseph Snodgrass ("Snodgrass Decl.") filed concurrently with the submission in further support of preliminary approval.

resolved and released through a prior executed settlement; (vi) GNY and its officers and directors; (vii) members of the judiciary and their staff to whom this action is assigned and their immediate families; and (viii) Class Counsel and their immediate families (collectively, "Exclusions"). *Id. at* ¶ 2.34.1-2.34.8.

### B. Class Members' Recovery Under The Settlement

The proposed Settlement provides significant relief to the Settlement Class members who submit valid claims Each member of the Settlement Class who submits a valid claim will receive significant relief under the terms of the settlement. Each such class member will receive **100%** of the Nonmaterial Depreciation that was withheld from their respective ACV payments and which remains outstanding. *Id.* at ¶¶ 4.11, 6.4. In addition, each such class member will receive interest of 5% accruing from the date of the final ACV payment through the date of final judgment. *Id.*

Based upon the data produced by GNY, the per claim average amount potentially available to the Class Members, before application of the interest award, is $13,947.21. Of course, this number is derived from the mean withholding, and almost all claims will be higher or lower. Roberts Decl. ¶ 28. The interest award for those with still withheld principal will accrue, in some cases, as far back as 2019 through the final approval date. Given the likely final approval date for this Settlement Agreement, Plaintiffs' counsel estimates that the class members will receive, on a per claim average, an additional 10% in interest amounts. *Id.* at ¶ 29.

### C. Disputes And Neutral Evaluator

Any Class Member may dispute the amount of the Claim Settlement Payment or denial of their claim by requesting in writing a final and binding neutral resolution by the Neutral Evaluator. SA ¶¶ 7.8-7.10. All disputes received from Class Members will be provided to GNY's Counsel and Plaintiffs' counsel, and GNY will then have thirty days to evaluate the claim or supply any

additional documentation to the Administrator. *Id.* at ¶ 7.9. The Neutral Evaluator will then issue a decision based only on the written submissions, and the decision of the Neutral Evaluator shall be final and binding. *Id.* at ¶ 7.10.

**D. The Release Of Claims**

In return for these payments, Plaintiffs and the Class Members will provide GNY a release narrowly tailored to the subject matter of this dispute—*i.e.*, the systemic practice of withholding of Depreciation and/or Nonmaterial Depreciation from ACV payments utilizing claim estimating software. All other unrelated disputes concerning an individual claim will continue to be handled in the ordinary course. *See* SA ¶ 9.1.

**E. Attorneys' Fees, Costs, And A Service Award**

Plaintiffs' counsel will seek as attorneys' fees and litigation costs and expenses, and GNY has agreed to pay if court approved, an amount no greater than $557,500.00. SA ¶¶ 4.1.2, 13.1. Class Members' recoveries will *not* be reduced or enhanced by the amounts of attorneys' fees, costs or litigation expenses paid. *See id.* at ¶ 13.2.

Additionally, Plaintiffs will also seek and GNY has agreed to pay service awards in the amount of $10,000.00 to the Representative Plaintiffs Danshir LLC and Danshir Property Management LLC ($10,000.00 collectively). *See id.* at ¶¶ 4.1.3, 13.5. If approved, this service award will *not* reduce the Class Members' recoveries. *See id.* at ¶ 1.10.

**F. The Class Notice And Claims Administration**

GNY will separately pay for settlement and claims administration up to $50,000. *See* SA ¶ 4.1.4. The cost of settlement and claims administration is not expected to exceed $50,000, and is estimated to be approximately $17,269.00. Roberts Decl. ¶ 30. All Class Members will be given

direct-mailed notice of the terms of the proposed Settlement at least seventy-five days prior to the Final Approval Hearing. *See id.* at ¶¶ 5.2-5.4 (and Exhibits B and C).

Prior to mailing of the Class Notice by the Administrator through the United States Postal Service, the Administrator will run all Class Members' names and addresses through a commercial database. *Id.* at ¶ 5.3. Notice will also be published on the internet on a settlement website. *Id.* at ¶ 5.7. A reminder postcard notice will also be issued prior to the expiration of the claims deadline. *Id.* at ¶ 5.6. Claim forms may be mailed or uploaded to the settlement website. *Id.* at ¶¶ 5.7, 6.2.

## IV.     THE SETTLEMENT CLASS IS CERTIFIABLE UNDER FED. R. CIV. P. 23.

The proposed Settlement comes prior to formal class certification and seeks to certify a class simultaneous with a settlement, commonly referred to as a "settlement class." As such, this Court must first ensure that the proposed class certification meets the requirements of Rule 23(a) and (b)(3), with the exception that the Court need not consider, in analyzing a proposed settlement class, whether trial would present intractable management problems. *See generally* William B. Rubenstein, 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:18 (6th ed. June 2022 Update) (hereafter "NEWBERG"); Wright and Miller, 7B FEDERAL PRAC. AND PROC. § 1797.2 (3d ed.) (April 2020 Update) (hereinafter "FED. PRAC.") (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)).[4]

When analyzing a proposed settlement class, the Court must first ensure that the proposed class meets the requirements of Fed. R. Civ. P. 23(a) and (b)(3), with the exception that the Court need not consider, in analyzing a proposed settlement class, whether trial would present intractable management problems. *See generally* NEWBERG § 13:12; FED. PRAC. § 1797.2.

---

[4] Unless otherwise noted, all emphasis is added, and internal citations and footnotes are omitted.

While the Supreme Court reiterated that a trial court must conduct a "rigorous analysis" to confirm that the requirements of Rule 23 have been met, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), the requisite "rigorous analysis" of the record and consideration of the merits must be focused on and limited to the question whether the class certification requirements have been established and, here, in the context of a proposed settlement class. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851-52 (6th Cir. 2013).

Here, the requirements for class certification are easily met for the proposed *settlement* class. This is because courts have repeatedly certified labor depreciation *litigation* classes: "Courts in jurisdictions where labor depreciation has been found to be unlawful have *uniformly found that common issues predominate* in cases challenging insurers' depreciation of labor costs" and have certified *litigation* classes. *Hicks v. State Farm Fire and Cas. Co.*, 2019 WL 846044, at *5 (E.D. Ky. Feb. 21, 2019), *aff'd* 965 F.3d 452 (6th Cir. July 10, 2020).[5] Furthermore, numerous courts have recently certified several depreciation *settlement* classes in the process of granting final approval of labor depreciation class settlements.[6]

---

[5] *E.g., Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700 (5th Cir. 2020); *Stuart v. State Farm Fire & Cas. Co.,* 910 F.3d 371 (8th Cir. 2018*); Arnold v. State Farm Fire & Cas. Co.*, No. 17-00148, 2020 WL 6879271 (S.D. Ala. Nov. 23, 2020); *Green v. Am. Modern Home Ins. Co.*, No. 4:14-04074 (W.D. Ark. Aug. 24, 2016); *McCain v. Baldwin Mut. Ins. Co.*, No. 2010-901266 (Montgomery Cty., Ala., Oct. 18, 2016), *rev'd due to inadequacy of representative*, 260 So.3d 801 (Ala. 2018); *Farmers Union Mut. Ins. Co. v. Robertson*, 370 S.W.3d 179 (Ark. 2010); *McLaughlin v. Fire Ins. Exchange*, No. 1316-CV11140 (Jackson Cty., Mo. July 12, 2017).

[6] *See* Roberts Decl. Ex. A (identifying labor depreciation class action settlements in which the courts have granted final certification of labor depreciation settlement classes between June 1, 2017 and January 12, 2023). To Plaintiffs' counsels' knowledge, every labor depreciation *settlement* class has been certified.

## A. The Settlement Meets The Requirements Of Rule 23(a).

### 1. Numerosity

Rule 23(a) requires that the number of class members be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a). While there is no "magic number" for numerosity, "a forty-member class is often regarded as sufficient to meet the numerosity requirement." *Mulvania v. Sheriff of Rock Island County*, 850 F.3d 849, 859 (7th Cir. 2017); *see also* NEWBERG § 3:12. Based upon data review and extrapolation, the attorneys estimate that class notice will issue for over 150 claims at issue. Numerosity is therefore readily satisfied. *See Sorensen v. CHT Corp.*, 2004 WL 442638, at *8 (N.D. Ill. Mar. 10, 2004) (Pallmeyer, J.) (holding that a class of "at least 50 members . . . easily satisfies the numerosity requirement, and courts have certified classes with far fewer members.")

### 2. Commonality

Commonality only requires that "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). "[T]he commonality requirement is not usually a contentious one … and is easily met in most cases." NEWBERG §13:18. To demonstrate commonality, plaintiffs' "claims must depend upon a common contention…that is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "[E]ven a single common question will do." *Id.* at 359.

Commonality is readily satisfied in labor depreciation cases like the instant case as the overarching issue is whether the insurer improperly withheld labor depreciation costs under the terms of its insurance policies. Here, Plaintiffs contend that the seminal disputed issue is the same one recently addressed by the Illinois Supreme Court—*i.e.*, a property insurer may not withhold a

portion of repair labor as depreciation when calculating ACV. *See Sproull*, 184 N.E.3d at 221.

This same issue has repeatedly been identified by federal courts as "a common question well suited

to class wide resolution." *Stuart v. State Farm Fire & Cas. Co.,* 910 F.3d 371, 375 (8th Cir. 2018);

*see also Hicks*, 965 F.3d at 459 ("Plaintiffs' claims share a common legal question central to the

validity of each of the putative class member's claims: whether State Farm breached Plaintiffs'

standard-form contracts by deducting labor depreciation from their ACV payments."); *Arnold v.

State Farm Fire & Cas. Co.*, No. 17-00148, 2020 WL 6879271, at *5 (S.D. Ala. Nov. 23, 2020)

("[C]ommonality is easily satisfied" where "overarching issue … is whether State Farm breached

its agreements with policyholders by improperly withholding labor depreciation …. All of the

policies … cover property located in Alabama, and thus Alabama law applies uniformly.");

*Mitchell v. State Farm Fire & Cas. Co.*, 327 F.R.D. 552, 561 (N.D. Miss. 2018) ("The proposed

class members, all of whom purchased insurance coverage from State Farm, each have a claim

concerning the issue of whether State Farm breached its policy by depreciating labor costs in

calculating actual cash value payments…. [C]ommonality is met."), *aff'd by* 954 F.3d 700 (5th

Cir. 2020). Indeed, "[t]his common question, posed in the context of [GNY's] uniform claim

handling practices, 'will yield a common answer for the entire class that goes to the heart of

whether [Defendant] will be found liable under the relevant laws.'" *Hicks*, 2019 WL 846044, at

*4, *aff'd by* 965 F.3d at 458-59 (6th Cir. 2020).

Moreover, regardless of whether GNY concedes that this issue was resolved by the Illinois

Supreme Court's decision in *Sproull* as it relates to GNY's particular policy forms, it is black-

letter law that conceded or otherwise resolved legal issues still satisfy the predominance inquiry

such that a class action remains an appropriate means of adjudicating the case. *Hicks*, 965 F.3d at

458-59 (rejecting insurer's argument that commonality cannot be satisfied where the common

liability question concerning labor depreciation was already answered in plaintiffs' favor); *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006) ("Even resolved questions continue to implicate the 'common nucleus of operative facts and issues' with which the predominance inquiry is concerned."); *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 299 (1st Cir. 2000) ("the fact that an issue has been resolved on summary judgment does not remove it from the predominance calculus"); NEWBERG § 4:51 ("the fact that an issue is conceded or otherwise resolved does not mean that it ceases to be an 'issue' for the purposes of predominance analysis"). Simply put, "resolved issues bear on the key question that the analysis seeks to answer: whether the class is a legally coherent unit of representation by which absent class members may fairly be bound." *In re Nassau Cnty. Strip Search Cases*, 461 F.3d at 228.

Accordingly, courts repeatedly find that common issues predominate in cases challenging insurers' withholding of labor costs as depreciation under the terms of standard-form insurance policies. *Mitchell*, 954 F.3d at 711-12 (district court did not abuse its discretion in finding predominance where overarching issue was whether insurer breached its contracts by depreciating labor costs); *Stuart,* 910 F.3d at 375-78 ("It was not an abuse of discretion for the district court to conclude that plaintiffs' [labor depreciation] claims share a common, predominating question of law" that is "well suited to classwide resolution"); *Arnold*, 2020 WL 6879271, at *8 ("in jurisdictions where labor depreciation is unlawful, as is the case here, courts have uniformly found that common questions predominate in cases challenging insurers' depreciation of labor costs"); *Hicks*, 2019 WL 846044, at *5-6 ("Courts in jurisdictions where labor depreciation has been found to be unlawful have uniformly found that common issues predominate in cases challenging insurers' depreciation of labor costs."); *Farmers Union Mut. Ins. Co. v. Robertson*, 370 S.W.3d 187 (Ark. 2010) ("[t]he requirement that the common issue[s] predominate is … satisfied" because

"whether Appellant was able to depreciate labor pursuant to the contractual terms of its policies would be the same and require the same proof").

Finally, in addition to the labor withholdings themselves, class members' entitlement to statutory prejudgment interest also presents a common issue. Commonality is thus easily satisfied.

### 3. Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). A putative class satisfies typicality "if the named representative's claims have the same characteristics as the claims of the class at large." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006). In other words, typicality is satisfied where the class consists of "individuals who were all subject to the same conduct, and each representative's claim would be based on the same legal theory and governed by the same law." *Shurland v. Bacci Cafe & Pizzeria on Ognden, Inc.*, 259 F.R.D. 151, 159 (N.D. Ill. 2009) (Pallmeyer, J.)

Here, the proposed class representatives' claims arising from the underpayment of their ACV claims, which they claim violate the terms of their standard-form contracts, are identical to the claims of the class and are thus typical. The additional claims for prejudgment interest are likewise identical for both the putative class and class representatives. Through these claims, Plaintiffs seek monetary relief for herself and all putative class members. Typicality is therefore satisfied. *See Arnold*, 2020 WL 6879271, at *5; *Mitchell*, 327 F.R.D. at 561-62; *Hicks*, 2019 WL 846044, at *4.

### 4. Adequacy

Rule 23(a)(4) requires a showing that the "representative parties will fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(a)(4). The adequacy requirement is

"relatively modest" and is satisfied where two requirements are met – (1) plaintiffs' counsel are qualified and competent to conduct the litigation; and, (2) the plaintiffs' interest are aligned with, and not antagonistic to, the class members. *Shurland*, 259 F.R.D. at 159. As to the first adequacy requirement, Plaintiffs retained counsel experienced in class actions and insurance law, including labor depreciation class actions. Roberts Decl. ¶¶ 4-10; Snodgrass Decl., ¶¶ 2-11. Indeed, Plaintiffs' counsel were also counsel on the *Sproull* case in which the insured prevailed before the Illinois Supreme Court. As to the second adequacy requirement, Plaintiffs' interests are perfectly aligned with the proposed class, as they seek to maximize everyone's recovery of compensatory damages and prejudgment interest. *Id.* at *7; *Hicks*, 2019 WL 846044, at *5.

Here, Plaintiffs are members of the proposed class and their interests are perfectly aligned with the proposed class, as they seek to maximize everyone's recovery of compensatory damages and prejudgment interest resulting from GNY's allegedly improper withholding of labor costs as depreciation in the calculation of ACV. The adequacy requirement is therefore satisfied.

**B. The Settlement Class Meets The Requirements Of Rule 23(b).**

To qualify for certification under Rule 23(b)(3), a settlement class must meet two requirements beyond the Rule 23(a) prerequisites: common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. FED. R. CIV. P. 23(b)(3); *see generally Amchem Prods. Inc.*, 521 U.S. at 615. In a settlement class situation, the Court does not inquire whether the "case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id.* at 620.

### *1. Predominance*

"Predominance 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Id.* at 623. Predominance is generally satisfied where "adjudication of questions of liability common to the class will achieve economies of time and expense." *Heard v. Becton, Dickinson & Co.*, 524 F. Supp.3d 831, 849 (N.D. Ill. 2021) (Pallmeyer, J.) (*quoting Comcast Corp. v. Behrend*, 569 U.S. 27, 41 (2013)). A plaintiff must show that the common issue or issues applicable to the class as a whole predominate over those issues subject to only individualized proof.

Here, as in other labor depreciation cases such as *Arnold*, "predominance is satisfied because the pertinent issue to every putative class member is whether [Defendants] breached the standard-form insurance policy by withholding labor depreciation when calculating ACV payments. Furthermore, … resolution of the central policy interpretation issues will materially advance the litigation for all class members." *Arnold*, 2020 WL 6879271, at *8-9.

As relevant here, federal courts have repeatedly found that common issues predominate in cases challenging insurers' withholding of labor costs as depreciation under the terms of standard-form insurance policies. *See id.* at *8 ("in jurisdictions where labor depreciation is unlawful, as is the case here, courts have uniformly found that common questions predominate in cases challenging insurers' depreciation of labor costs"); *see also Mitchell*, 954 F.3d at 711-12 (finding predominance where overarching issue was whether insurer breached its contracts by depreciating labor costs); *Stuart,* 910 F.3d at 375-78 ("plaintiffs' [labor depreciation] claims share a common, predominating question of law" that is "well suited to classwide resolution"); *Hicks*, 2019 WL 846044, at *5-6 ("Courts in jurisdictions where labor depreciation has been found to be unlawful have uniformly found that common issues predominate ….").

*2. Superiority*

Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy. FED. R. CIV. P. 23(b)(3). The superiority of class certification over other available methods is measured by consideration of four factors: (1) the class members' interest in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and, (4) the likely difficulties of managing a class action. FED. R. CIV. P. 23(b)(3)(a)-(d). Ultimately, the goal of the superiority requirement is to ensure that a "class action will achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated . . . ." *Amchem Prods. Inc.*, 521 U.S. at 615.

All of the superiority factors favor certification. Here, resolving this case in this forum will achieve economies of time, effort and expense by resolving the claims at issue in one fell swoop. Moreover, there is no known pending litigation concerning the issues in this case, this forum is an appropriate forum to adjudicate this case, and there are no likely difficulties in managing this case. Accordingly, all the requirements of Rule 23 are satisfied.

## V. THE SETTLEMENT MERITS PRELIMINARY APPROVAL.

### A. The Court Should Grant Preliminary Approval Because The Settlement Satisfies The Requirements Of Rule 23 and Applicable Precedent.

Rule 23(e) sets forth the factors that affect whether a court should approve a class action settlement. *See* FED. R. CIV. P. 23(e)(1)-(2). In the context of preliminary approval, Rule 23(e) directs putative class counsel to provide the Court with information sufficient to enable the court to determine that the settlement is fair, reasonable and adequate, and that notice is justified because the Court will likely grant final approval to the settlement. *See id.* The Rule 23(e) factors discussed

below warrant preliminary approval of this settlement as this settlement is "fair, reasonable and adequate." FED. R. CIV. P. 23(e)(2); *see generally Wong v. Accretive Health*, 773 F.3d 859, 862 (7th Cir. 2014).

Before class notice can issue, the putative class representatives must demonstrate "that the Court will likely be able to" approve the settlement under Rule 23(e)(2); and (ii) "certify the class for purposes of judgment" arising from the settlement. FED. R. CIV. P. 23(e)(1)(B). Under Rule 23(e)(2), a court may only approve a settlement based on a finding that the proposed settlement is "fair, reasonable and adequate" after considering whether:

(A)  the class representatives and class counsel have adequately represented the class;

(B)  the proposal was negotiated at arm's length;

(C)  the relief provided for the class is adequate, taking into account:

  (i)  the costs, risks, and delay of trial and appeal;

  (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;

  (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

  (iv)  any agreement required to be identified under Rule 23(e)(3); and

(D)  the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).

When considering these factors, the Court should keep in mind the presumption in favor of finding a class action settlement fair. *See generally Young v. Rolling the Dough, Inc.*, 2020 WL 969616, at *3 (N.D. Ill. Feb. 27, 2020) (*quoting Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)). "The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals. Settlement is generally favored because it represents a compromise reached between the parties to the suit and relieves them, as well as the judicial system, of the costs and burdens of further litigation." NEWBERG § 13:44.

At the preliminary approval stage, the Court is not required to determine whether it will ultimately approve the settlement, but only whether "the proposed settlement will likely earn final approval." FED. R. CIV. P. 23(e) Adv. Comm. Note at 27; As set forth in detail below, the Rule 23(e) factors support preliminary approval of the settlement.

## B. The Settlement Achieves An Excellent Result For The Proposed Settlement Class.

### 1. The Adequacy Of Representation

As discussed earlier, Plaintiffs and Plaintiffs' counsel have adequately represented the class. Plaintiffs were active in the litigation of this case by corresponding with counsel, providing necessary records and attending mediation. Moreover, Plaintiffs' Counsel in this lawsuit are also putative or certified class counsel in a majority of the pending and resolved labor depreciation class actions throughout the United States and have decades of experience in insurance, class actions and complex litigation, including litigating similar labor depreciation claims before this Court. *See* Roberts Decl. ¶¶ 4-10; Snodgrass Decl. ¶¶ 2-10. Moreover, some of Plaintiffs' counsel are the same counsel who successfully litigated *Sproull.* Plaintiffs' Counsel additionally succeeded in securing a Settlement with extraordinary relief against a formidable opponent. The "adequacy of representation" factor is thus satisfied.

### 2. The Settlement Was Negotiated At Arm's Length

"A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Group, Inc. v. ACA INA Holdings, Inc.*, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012). Here, the parties began settlement discussions after GNY provided extensive data regarding the claims made during the class period, including claims that were not part of the class. Roberts Decl. ¶¶ 18-21. Moreover, the essential terms of the settlement were achieved after two

mediations with a retired federal magistrate. *Id.* at ¶ 19; *see generally In re Navistar MaxxForce Engines Mktg., Sales Practices and Prods. Liab. Litig.*, 2020 WL 2477955, at *3 (N.D. Ill. Jan. 21, 2020) (finding settlement was negotiated at arm's length when mediated by a retired federal judge).

Moreover, class relief was negotiated and agreed upon before any negotiations concerning attorneys' fees, costs and service awards occurred. *See* Roberts Decl. ¶¶ 20-23, 33. This further supports the fact that there was no collusion between the parties, and that the settlement negotiations were conducted at arm's length.

### 3. *The Relief Provided To The Settlement Class Is Outstanding.*

The relief provided to the class in this case is outstanding. Each class member who submits a valid claim will not only receive **100%** of their non-material depreciation withheld by GNY,[7] they will receive 5% interest accruing from the date of the last ACV payment through the date of final judgment. SA ¶¶ 4.1.1, 6.4. The class members who submit a claim are effectively receiving an amount close to their best day in court, without having to proceed to trial.

### a. *The Complexity, Expense And Likely Duration Of The Litigation*

"It is common knowledge that class action suits have a well deserved reputation as being most complex." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Labor depreciation class actions are particularly complex and slow moving due to the increased likelihood of interlocutory appeals via state supreme court "question certification" laws, 28 U.S.C. 1292(b) and/or Federal Rule of Civil Procedure 23(f). For example, the *Sproull* case is still being litigated after six years.

---

[7] Settlements in which class members are entitled to receive 100% or more of their claimed damages are both rare and exceptional. *See, e.g., Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1062 (D. Minn. 2010) ("Settlement Class Members who file timely and otherwise valid claims will receive *100%* of their claimed damages—*a percentage almost unheard of in class-action litigation*").

Other labor depreciation cases have fared the same. *See Mitchell v. State Farm Fire & Cas. Co.*, No. 17-00170 (N.D. Miss.) (pending for nearly three-and-a-half years and after a Fifth Circuit appellate decision). *Stuart v. State Farm Fire & Cas. Co.*, Case No. 4:14-4001 (W.D. Ark.) was filed on January 2, 2014 and remained pending in the Western District of Arkansas over six-years and after an Eighth Circuit appellate decision.

The instant lawsuit thus could have continued for several additional years in trial and appellate courts absent settlement. Experts in the areas of claims handling and data manipulation would have been disclosed as experts. Counsel for both parties included national class action practice attorneys. Ultimately, the settlement should be approved as this settlement "allows the class to avoid the inherent risk, complexity, time and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011).

> b. *Class Members Have A Simple Way To Receive Relief From the Settlement.*

Under Rule 23(e)(2)(C)(ii), the Court also considers "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." FED. R. CIV. P. 23(e)(2)(C)(ii). This factor is particularly concerned with "methods of processing claims so complex that they discourage class members from pursuing valid claims." *T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943, at *14 (N.D. Ill. Mar. 25, 2022). Here, the claims process is straight-forward. A class member simply needs to print their name, fill out their address and sign the claim form. SA, Ex. C. Moreover, the claim form can be submitted via mail or through the settlement website. *See id;* SA ¶¶ 5.7, 6.2. A request that a claimant submit a claim form that requires "claimants provide their names, addresses, and signature" does not raise concerns with the claims process. *T.K. Through Leshore*, 2022 WL 888943, at *14.

### c. The Stage Of The Proceedings

The Court's consideration of the stage of proceedings and the nature and extent of discovery in evaluating the fairness of a settlement is focused on whether the parties have obtained sufficient information to evaluate the merits of competing positions. That said, courts "encourage parties to settle class actions early, without expending unnecessary resources." *Ivery v. RMH Franchise Corp.*, 2019 WL 13256098, at *1 (N.D. Ill. July 10, 2019). The parties here engaged in significant informal discovery, regarding claims made during the relevant time period. *See* Roberts Decl. ¶¶ 18, 21, 27. Plaintiffs' Counsel were therefore well positioned to intelligently assess the merits of the lawsuit.

### d. The Strength Of Plaintiffs' Case And The Value of the Settlement

A critical factor in the fairness inquiry is the court balancing "the strength of the merits of Plaintiffs' case against the value that they will receive from this settlement." *In re TikTok, Inc. Consumer Privacy Litig.*, --F.Supp.3d--, 2022 WL 2982782, at *20 (N.D. Ill. July 28, 2022). While the Illinois Supreme Court's holding in *Sproull* certainly strengthens Plaintiffs' case, success was not a guarantee. While the labor depreciation litigation classes referenced above have been initially certified for contractual claims as in the case here, no labor depreciation class action has ever gone to trial or faced the issue of decertification.

The potentially available recovery by eligible class members of 100% of the Nonmaterial Depreciation withheld from their ACV payments, plus 5% interest from the date of the initial ACV payment through the date of Final Judgment, reflect the strong value of these claims.[8] Finally,

---

[8] *See, supra,* note 7; *see also, e.g., Bennett v. Behring Corp.*, 737 F.2d. 982, 986-87 & n.9 (11th Cir. 1984) (affirming settlement approval in which class fund represented 5.6% of potential recovery); *In re Blue Cross Blue Shield Antitrust Litig.*, 2020 WL 8256366, at *18 (N.D. Ala. Nov. 30, 2020) (preliminarily approving settlement fund representing between 7.3% and 14.3% of the relevant expert analyses of potential class recovery); *Morgan v. Public Storage*, 301 F. Supp. 3d

GNY has agreed to pay service awards, attorneys' fees, case expenses, settlement administration costs of up to $50,000.00, *on top of* Class Members' recoveries. These terms are very favorable.

       e.  *The Opinions Of Class Counsel And The Class Representatives, And The Reaction Of Class Members.*[9]

"The opinion of competent counsel is relevant to the question whether a settlement is fair, reasonable and adequate under Rule 23." *Schulte*, 805 F. Supp. 2d at 586. Here, Plaintiffs' Counsel strongly recommend the settlement. Roberts Decl. ¶ 43; Snodgrass Decl. ¶ 11. The Class Representatives, knowing that the proposed Settlement will result in an 100% recovery of still-withheld Nonmaterial Depreciation plus prejudgment interest, are similarly pleased with the proposed Settlement.

**C.  Plaintiffs' Forthcoming Motion Requesting Attorneys' Fees, Costs, and A Service Award Falls Within The Range Of Reasonableness Sufficient To Allow Preliminary Approval And Notice To The Class.**

The Settlement Agreement provides that Plaintiff's counsel will seek as attorneys' fees, costs and litigation expenses, and GNY has agreed to pay if Court approved, an amount no greater than $557,500.00. Class Members' recoveries will not be reduced by the amounts of attorneys'

---

1237, 1250-51 (S.D. Fla. 2016) (approving settlement that obtained 20% the amount sought at trial and "guarantees that each Class member who files a claim will receive a recovery of up to 50% of his or her individual damages"); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1350 (S.D. Fla. 2011) (approving $410 million class settlement that provided recovery of 9% to 45% of potential recovery that could have been obtained through trial, noting that "a 9 percent settlement (the absolute lowest percentage anyone has attempted to ascribe to this Settlement) is still within the range of reasonableness" given the risks associated with remaining defenses and appeals).

[9] The reaction of absent class members cannot be determined prior to the dissemination of notice.

fees. Plaintiffs will also seek a service award in the amount of $10,000, which if approved, will *not* reduce the Class Members' recoveries.

Under the Settlement Agreement, and pursuant to FED. R. CIV. P. 23(e), Class Members will receive notice that fees, costs, and litigation expenses will be sought, and will be provided information about how they can object, assuming the Court preliminarily approves the Settlement. Plaintiff's counsel will then file a motion for fees and expenses pursuant to both the Settlement Agreement and FED. R. CIV. P. 23. In turn, this Court will then award the attorneys' fees, costs, and service awards, if any, that it determines appropriate assuming the Settlement is finally approved.

Although attorneys' fees and costs are analyzed only at the final approval stage, Plaintiffs' counsel will properly seek fees based upon a percentage of the amounts made available to the class on a claims made basis. At that time, Plaintiffs' counsel will demonstrate that they are seeking a reasonable percentage of the amounts to be made available to the class. A "typical contingency agreement in this circuit might range from 33% to 40% of recovery." *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 201-02 (N.D. Ill. 2018). Further, Plaintiffs' counsel will also show that the percentage to be sought here is generally below that approved by federal courts.

Assuming preliminary approval of the settlement is granted, Plaintiffs' counsel will show upon final approval that the attorneys' fees sought here are fully consistent with comparable cases. Specifically, the requested fees are consistent with several final class action approval orders from state and federal courts in similar labor depreciation class action settlements. *See* Roberts Decl. Ex. A (identifying labor depreciation class action settlements in which class counsel were awarded between 17.08% and 27.7% of total monetary benefit made available to class).

Here, pursuant to the parties' agreement, GNY has agreed to pay, subject to Court approval, an amount no greater than $557,500.00 in attorneys' fees and litigation expenses. The parties estimate the aggregate value of the relief made available to the class for payment on a claims made basis is approximately $2,331,974.08 for claims. In addition, the settlement provides for the costs of administration (estimated to be approximately $17,269.00), plus the proposed service award ($10,000.00). Significantly, attorneys' fees and expenses that are paid over and above these amounts ($557,500.00). Thus, attorneys' fees sought are approximately 23.9 % of the aggregate value of the proposed settlement amounts made available to the putative class without accounting for the cost of administration and a representative service award ($557,500.00/$2,331,974.08).[10] *See* Roberts Decl. ¶ 35. This is within the range of reasonableness for fee awards.

Finally, because the attorneys' fees will not reduce any class member's recovery and the attorneys' fees are to be paid "*over and above* the settlement costs and benefits with no reduction of class benefits," agreements between plaintiffs' and defense counsel as to the amount to fees "are *encouraged*, particularly where the attorneys' fees are negotiated separately and only after all the

---

[10] Both the United States Supreme Court holds that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, (1980); *see also* 2 MCLAUGHLIN ON CLASS ACTIONS § 6:24 (18th ed. Oct. 2021 Update) ("Most Circuits to address the question hold that in a common fund case … attorneys' fees should be calculated as a percentage of the *total funds made available* through counsel's efforts, *whether claimed or not*." (citing cases)). Further, precedent supports applying the selected percentage to the total benefit to the class before separately deducting litigation costs and expenses from the fund. *See, e.g., In re Target Corp. Customer Data Sec. Breach Litig.*, 892 F.3d 968, 976 (8th Cir. 2018) ("the district court acted within its discretion when it included notice and administrative expenses in its calculation of the total benefit to the class"); *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 282-285 (6th Cir. 2016) (holding percentage-of-fund approach properly focuses on the total benefit made available to class; "[w]hen conducting a percentage of the fund analysis, … [a]ttorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class (which includes the 'benefit to class members,' the attorney's fees and may include costs of administration)").

terms have been agreed to between the parties." *Manners v. Am. Gen. Life Ins. Co.*, No. 3-98-0266, 1999 WL 33581944, *28-30 (M.D. Tenn. Aug. 11, 1999); *Bailey v. AK Steel Corp.*, No. 1:06-468, 2008 WL 553764, at *1 (S.D. Ohio Feb. 28, 2008) ("courts are especially amenable to awarding negotiated attorneys' fees and expenses in a reasonable amount where that amount is in *addition to and separate from* the defendant's settlement with the class"). Indeed, courts have held that these "over and above" fee requests are entitled to a "presumption of reasonableness." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 322-33 (W.D. Tex. 2007); *see also Cole v. Collier*, 2018 WL 2766028, at *13 (S.D. Tex. June 8, 2018) ("When the amount of fees is agreed upon, is separate and apart from the class settlement, and has been negotiated after the other terms have been agreed, the attorneys' fee is presumed to be reasonable.")

Finally, the payment of a $10,000 service award sought here is consistent with awards in this Court and those approved in other labor depreciation class actions. *See, e.g., Castillo v. Noodles & Co.*, 2016 WL 7451626, at *2 (N.D. Ill. Dec. 23, 2016) (awarding $10,000.00 representative service award); *Mitchell v. State Farm Fire & Cas. Co.*, No. 17-00170-MPM-RP (N.D. Miss. Feb. 25, 2021) (*Mitchell* Dkt. 249) (awarding $15,000 service award to class representative in Mississippi labor depreciation class action).

Further, the proposed class representatives, Danshir, LLC and Danshir Property Management, LLC, obtained a settlement with an aggregate value estimated to be approximately $2,331,974.08 in total benefits. Their willingness to serve as class representatives, to stay updated on the case, and to provide necessary information and records, was critical to the litigation. Because this Court will fully analyze the appropriateness and amount of the service award at the final approval hearing, the proposed service award in the Settlement Agreement does not provide grounds for delaying the grant of preliminary approval.

## VI.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court preliminarily approve the Settlement. In order to comply with the notice requirements, as well as to allow sufficient time after notice for class members to decide whether to opt out of the class or to object to the settlement, Plaintiffs further request that the Court schedule a final fairness hearing no sooner than 105 days from the date of preliminary approval. *See* SA ¶ 3.2.1.

Dated:  April 14, 2023

By: */s/ Christopher E. Roberts*
David T. Butsch #6205434
Christopher E. Roberts #6302857
BUTSCH ROBERTS & ASSOCIATES LLC
231 S. Bemiston Ave., Suite 260
Clayton, MO 63105
Tel: (314) 863-5711
butsch@butschroberts.com
roberts@butschroberts.com

and

James X. Bormes #6202568
Catherine P. Sons #6290805
LAW OFFICE OF JAMES X. BORMES, P.C.
8 South Michigan Avenue, Ste. 2600
Chicago, Illinois 60603
Tel: (312) 201-0575
bormeslaw@sbcglobal.net
cpsons@bormeslaw.com

and

T. Joseph Snodgrass #6319907
SNODGRASS LAW LLC
100 S. Fifth Street, Suite 800
Minneapolis, MN 55402
Tel: (612) 448-2600
jsnodgrass@snodgrass-law.com

*Attorneys for Plaintiffs and
Putative Class Representatives*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 14, 2023, a copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

*/s/ Christopher E. Roberts*