**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DANSHIR, LLC, and DANSHIR PROPERTY MANAGEMENT, LLC, individually, and on behalf of all others similarly situated, | ) ) ) ) | |
| | ) | Case No.: 1:21-cv-01158 |
| Plaintiffs, | ) ) | Hon. Rebecca R. Pallmeyer |
| v. | ) ) | |
| GREATER NEW YORK MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' UNOPPOSED MOTION AND MEMORANDUM OF LAW IN SUPPORT
OF FINAL APPROVAL OF CLASS SETTLEMENT**

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................4

II.    RELEVANT HISTORY ......................................................................................5

III.   SUMMARY OF SETTLEMENT TERMS AND CLASS NOTICE ...................5

     A. Class Members' Recovery Under The Settlement .........................................6

     B. Disputes And The Neutral Evaluator ...........................................................6

     C. Release Of Claims.........................................................................................7

     D. Attorneys' Fees, Costs, And Representative Service Award ........................7

     E. Class Notice And Settlement Administration ................................................7

IV.   THE SETTLEMENT CLASS REMAINS CERTIFIABLE UNDER RULE 23 ................8

     A. The Settlement Continues To Meet The Requirements Of Rule 23(a).........................9

         1. *Numerosity* ...............................................................................9

         2. *Commonality* .............................................................................10

         3. *Typicality*...................................................................................11

         4. *Adequacy* ...................................................................................12

     B. The Settlement Continues to Meet The Requirements Of Rule 23(b).........................12

         1. *Predominance* .............................................................................13

         2. *Superiority*...................................................................................14

V.    THE SETTLEMENT MERITS FINAL APPROVAL ......................................15

     A. The Court Should Grant Final Approval Because The Settlement
        Still Satisfies The Requirements Of Rule 23 And Applicable Precedent
        ........................................................................................................15

     B. The Settlement Achieves An Excellent Result For The Class .....................16

         1. *The Adequacy Of Representation*.......................................................16

         2. *The Settlement Was Negotiated At Arm's Length* .............................16

    3. *The Relief Provided To The Class Is Exceptional* ...............................................17

        a. *The Complexity, Expense And Likely Duration Of The Litigation* ...............17

        b. *Class Members Have A Simple Way To Receive Compensation* ..................18

        c. *The Stage Of Proceedings* ...............................................................................19

        d. *The Strength of Plaintiffs' Case And The Value Of The Settlement* .............19

        e. *The Opinions Of Class Counsel And The Class Representatives, And The Reaction Of Class Members* ........................................................................20

C. The Court Should Award Plaintiffs' Requested Requesting Attorneys' Fees, Costs And Service Award .......................................................................................................20

   1. *The Requested Attorneys' Fees and Costs are Reasonable and Should be Approved* .......................................................................................................................20

   2. *A Service Award Should be Awarded to the Class Representatives For Their Efforts in Assisting Class Counsel in Prosecuting this Action* .........................................25

CONCLUSION ................................................................................................................26

# I.    INTRODUCTION

The Settlement Agreement reached between Plaintiffs Danshir LLC and Danshir Property Management, LLC ("Plaintiffs"),  on behalf of themselves and the proposed Settlement Class, on the one hand, and Defendant Greater New York Mutual Insurance Company ("GNY"), on the other, was previously submitted to the Court as part of Plaintiffs' preliminary approval papers. Dkt. 49-1. The settlement was preliminarily approved as fair and reasonable by the Court. Dkts. 51, 54, 57. GNY does not oppose final approval of the settlement.

Plaintiffs respectfully submit this unopposed[1] motion seeking the Court's final approval of this Settlement under Fed. R. Civ. P. 23(e), and to award Plaintiffs' requested attorneys' fees and a class representative service award. Despite a robust notice program, no class members have opted out or objected to the Settlement. Ex. 1, Declaration of Bryn Bridley, ¶¶ 15-16 ("Bridley Decl.").

The fact no class members have opted out or objected to the Settlement is not surprising because the relief afforded by the Settlement is outstanding and relatively unheard of in class action cases. For Settlement Class members[2] who timely submit valid claim forms, and for whom there remains some Nonmaterial Depreciation still withheld from an Actual Cash Value ("ACV") claim payment, their proposed settlement payments will be equal to **100%** of the Nonmaterial Depreciation still withheld from their respective ACV payments, plus simple interest at 5% per annum accruing from the date of the final ACV payment through the date of Final Judgment. Settlement Agreement ("SA") ¶¶ 4.1.1, 6.4.[3] This results in an average payment of **over $15,000**

---

[1] As paragraph 1.14 of the Settlement Agreement makes clear, however, GNY denies each and every allegation of liability, wrongdoing and damages, and believes they have substantial factual and legal defenses to all claims and class allegations relating to this case.

[2] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Settlement Agreement.

[3] The Settlement Agreement was previously provided to the Court. *See* Dkt. 49-1.

to each class member who submits a valid claim form. Ex. 2, Declaration of Christopher E. Roberts, ¶¶ 5-8 ("Roberts Decl.").

Ultimately, as detailed below, the Settlement and the requested attorneys' fees and representative service award are "fair, reasonable, adequate, and in the best interests of Class Members." *McDaniel v. Quest Commc'ns Corp.*, 2011 WL 13257337, at *2 (N.D. Ill. Aug. 29, 2011) (Pallmeyer, J.). Final approval is warranted.

## II.    RELEVANT HISTORY

For purposes of brevity, Plaintiffs previously set forth the background and procedural history of this case, including the history of settlement negotiations, when moving for preliminary approval of and will not repeat that here. *See* Dkt. 49, pp. 2-5; *see also* Dkt. 49-2 ¶¶ 12-24.

## III.    SUMMARY OF SETTLEMENT TERMS AND CLASS NOTICE

The "Settlement Class" is defined as:

> Representative Plaintiffs and all other certain policyholders under commercial lines property insurance policy issued by GNY who made a covered Structural Loss claim for property located in the State of Illinois during the applicable Class Period, as defined below, and who were issued an ACV payment where Nonmaterial Depreciation was withheld. Settlement Class also includes commercial policyholders for which an ACV would have been made but for the withholding of Nonmaterial Depreciation causing the loss to drop below the deductible.

SA ¶ 2.33. The Class Period is from January 1, 2019 through September 23, 2021, and is determined by the date of the initial ACV payment or the date that payment would have been issued but for the withholding of Nonmaterial Depreciation. *Id.* at ¶ 2.12.

The Settlement Class excludes: (i) policyholders whose claims arose under policy forms, endorsements, or riders expressly permitting Nonmaterial Depreciation within the text of the policy form, endorsement or rider (*e.g.*, by express use of the words "depreciation" and "labor" within the text of the policy form, endorsement, or rider); (ii) policyholders who received one or

more ACV Payments for claims, but not replacement cost value payments, that exhausted the applicable limits of insurance; (iii) policyholders whose claims were denied or abandoned without ACV Payment; (iv) policyholders other than the class representatives whose claims are currently, or were previously litigated by or against GNY in Illinois state or federal court; (v) policyholders whose claims have been fully resolved and released through a prior settlement executed with GNY; (vi) GNY and its officers and directors; (vii) members of the judiciary and their staff to whom this action is assigned and their immediate families; and (viii) Class Counsel and their immediate families (collectively, "Exclusions"). *Id. at* ¶¶ 2.34.1-2.34.8.

### A. Class Members' Recovery Under The Settlement

The proposed Settlement provides significant relief to each Settlement Class members who submit valid claims. Each such class member will receive **100%** of the Nonmaterial Depreciation that was withheld from his or her respective ACV payments that remain outstanding. *Id.* at ¶¶ 4.11, 6.4. In addition, each such class member will receive interest of 5% accruing from the date of the final ACV payment through the date of final judgment. *Id.* Each class member who submits a valid claim will receive an average payout of over $15,000. Roberts Decl. ¶¶ 5-8.

### B. Disputes And the Neutral Evaluator

Any Class Member may dispute the amount of the Claim Settlement Payment or denial of their claim by requesting in writing a final and binding neutral resolution by the Neutral Evaluator. SA ¶¶ 7.8-7.10. All disputes received from Class Members will be provided to GNY's Counsel and Class Counsel, and GNY will then have thirty days to evaluate the claim or supply any additional documentation that will be provided to the Neutral Evaluator. *Id.* at ¶ 7.9. The Neutral Evaluator will then issue a decision based only on the written submissions, and the decision of the Neutral Evaluator will be final and binding. *Id.* at ¶ 7.10.

### C. Release Of Claims

In return for these payments, Plaintiffs and the Class Members will provide GNY a release narrowly tailored to the subject matter of this dispute—*i.e.*, the systemic practice of withholding of Depreciation and/or Nonmaterial Depreciation from ACV payments utilizing claim estimating software. All other unrelated disputes concerning an individual insurance claim will continue to be handled in the ordinary course. *See* SA ¶ 9.1.

### D. Attorneys' Fees, Costs, And Representative Service Award

As will be discussed further below, GNY has agreed to pay Class Counsel $557,500.00 in attorneys' fees and expenses and a representative service award of $10,000.00. SA ¶¶ 4.1.2-4.1.3, 13.1, 13.5. Settlement Class Members' recoveries will *not* be reduced by the amounts of attorneys' fees, costs or litigation expenses paid. *See id.* at ¶ 13.2.

### E. Class Notice And Settlement Administration

GNY will separately pay for settlement and claims administration. *See* SA ¶ 4.1.4. The cost of settlement and claims administration was $19,694.00. Bridley Decl., ¶ 20. All Class Members were mailed notice of the terms of the proposed Settlement as were the relevant state attorneys general as required by CAFA. *See id.* at ¶¶ 4-10 (and Class Notice and CAFA Notice - Declaration Exhibits A through C).

Prior to mailing of the Class Notice, the settlement administrator ran all Class Members' names and addresses through the National Change of Address database. *Id.* at ¶ 6. Notice was successfully delivered to over 91% of the Class Members.[4] A reminder postcard notice will also be issued prior to the expiration of the claims deadline. *Id.* at ¶ 19.

---

[4] "Courts have consistently recognized that due process does not require that every class member receive actual notice so long as the court reasonably selected a means likely to apprize interested

In addition, the administrator has maintained a settlement website. *Id.* at ¶ 11. The settlement website includes answers to frequently asked questions; a list of important dates; and a copy of the settlement agreement, the operative complaint, the claim form, and other settlement-related documents relevant to the case. *Id.* The settlement website also includes an option through which class members can upload their claim forms. *Id.*

The deadline to opt-out or object to the Settlement was September 26, 2023. Dkt. 57, pp. 7-8. No class members have opted -or objected to the Settlement. Bridley Decl., ¶ 16.

## IV.     THE SETTLEMENT CLASS REMAINS CERTIFIABLE UNDER RULE 23.

When analyzing a proposed settlement class, the Court must first ensure that the proposed class meets the requirements of Fed. R. Civ. P. 23(a) and (b)(3), with the exception that the Court need not consider, in analyzing a proposed settlement class, whether trial would present intractable management problems. *See generally* 4 William B. Rubenstein, NEWBERG ON CLASS ACTIONS § 13:12 (6th ed.) (June 2023 Update) (hereafter "NEWBERG"); Mary Kay Kane, 7B FEDERAL PRACTICE AND PROCEDURE (WRIGHT & MILLER) § 1797.2 (3d ed. Apr. 2023 Update) (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997)).

While the Supreme Court reiterated that a trial court must conduct a "rigorous analysis" to confirm that the requirements of Rule 23 have been met, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011), the requisite "rigorous analysis" of the record and consideration of the merits must be focused on and limited to the question of whether the class certification requirements have been established and, here, in the context of a proposed settlement class. *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851-52 (6th Cir. 2013).

---

parties." *In re Silicone Gel Breast Implant Prods. Liab. Litig.*, 2010 WL 11506713, at *48 (N.D. Ala. May 19, 2010) (collecting authorities).

Here, the requirements for class certification continue to be met for the proposed *settlement* class. "Courts in jurisdictions where labor depreciation has been found to be unlawful have *uniformly found that common issues predominate* in cases challenging insurers' depreciation of labor costs" and have certified *litigation* classes. *Hicks v. State Farm Fire & Cas. Co*., 2019 WL 846044 (E.D. Ky. Feb. 21, 2019) (emphasis added), *reh'g en banc denied* (6th Cir. Aug. 26, 2020).[5] Furthermore, numerous courts certified several depreciation class action cases.[6]

## A.    The Settlement Continues to Meet The Requirements Of Rule 23(a).

### 1.  *Numerosity*

Rule 23(a) requires that the number of class members be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a). While there is no "magic number" for numerosity, "a forty-member class is often regarded as sufficient to meet the numerosity

---

[5] *E.g., Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700 (5th Cir. 2020); *Stuart v. State Farm Fire & Cas. Co.,* 910 F.3d 371 (8th Cir. 2018*); Arnold v. State Farm Fire & Cas. Co.*, No. 17-00148, 2020 WL 6879271 (S.D. Ala. Nov. 23, 2020); *Green v. Am. Modern Home Ins. Co.*, No. 4:14-04074 (W.D. Ark. Aug. 24, 2016); *Farmers Union Mut. Ins. Co. v. Robertson*, 370 S.W.3d 179 (Ark. 2010); *McLaughlin v. Fire Ins. Exch.*, No. 1316-CV11140 (Jackson Cty., Mo. July 12, 2017).

[6] *See also, e.g., Schulte v. Liberty Ins. Corp.*, No. 3:19-cv-00026 (S.D. Ohio May 20, 2021); *Arakoni v. Memberselect Ins. Co.*, No. 1:20-cv-000092 (N.D. Ohio Mar. 3, 2021); *Koester v. USAA Gen. Indem. Co.*, No. 19-02283 (W.D. Tenn. Sept. 4, 2020); *Oglesby v. Erie Ins. Co.*, No. 19-02361 (W.D. Tenn. Aug. 4, 2020); *Wade v. Foremost Ins. Co.*, No. 18-02120-JPM (W.D. Tenn. July 6, 2020) (hereinafter "*Wade* Order"); *Halford v. Mid-Century Ins. Co.*, No. 19-01077-JPM (W.D. Tenn. July 6, 2020); *Stuart v. State Farm Fire & Cas. Co.*, No. 4:14-cv-4001 (W.D. Ark. June 2, 2020) (hereinafter "*Stuart* Order"); *Baker v. Farmers Grp, Inc.*, et. al, No. CV--17-03901-PHX-JJT, DE 70 (D. Ariz. Sept. 25, 2019); *Braden, et al. v. Foremost Ins. Co. Grand Rapids*, No. 4:15-cv-04114-SOH, DE 119 (W.D. Ark. Oct. 9, 2018); *Larey v. Allstate Prop. & Cas. Ins. Co*., No. 4:14-cv-04008-SOH, DE 79 (W.D. Ark. Feb. 9, 2018); *Brown v. Homesite Group Inc. d/b/a Homesite Home Ins*., No. 4:14-cv-04026-SOH, DE 58 (W.D. Ark. April 7, 2017); *Goodner v. Shelter Mut. Ins. Co.*, Case No. 4:14-cv-04013-SOH, DE 73 (W.D. Ark. June 6, 2017); *Green v. Am. Modern Home Ins. Co., et. al*, No. 4:14-cv-04074-SOH, DE 94 (W.D. Ark. June 1, 2017); *Adams v. Cameron Mut. Ins. Co*., No. 2:12-cv-02173-PKH, DE 52 (W.D. Ark. Aug. 27, 2015); *Hawker v. Pekin Ins. Co.*, No. 21-cv-002169 (Ct. of Common Pleas, Franklin Cnty., Ohio Feb. 25, 2022). To Plaintiffs' counsels' knowledge, every labor depreciation *settlement* class has been certified.

requirement." *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859 (7th Cir. 2017); *see also* Newberg § 3:12. Here, there were 100 class members. Bridley Decl., ¶¶ 5-10. Numerosity is therefore readily satisfied. *See Sorensen v. CHT Corp.*, 2004 WL 442638, at *8 (N.D. Ill. Mar. 10, 2004) (Pallmeyer, J.) (holding that a class of "at least 50 members . . . easily satisfies the numerosity requirement, and courts have certified classes with far fewer members.")

2. *Commonality*

Commonality only requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[T]he commonality requirement is not usually a contentious one … and is easily met in most cases." Newberg §13:18. To demonstrate commonality, plaintiffs' "claims must depend upon a common contention…that is capable of class wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "[E]ven a single common question will do." *Id.* at 359.

Commonality is readily satisfied in labor depreciation cases like the instant case as the overarching issue is whether the insurer improperly withheld labor depreciation costs under the terms of its insurance policies. Here, Plaintiffs contend that the seminal disputed issue is the same one recently addressed by the Illinois Supreme Court—*i.e.*, whether a property insurer may not withhold a portion of repair labor as depreciation when calculating ACV. *See Sproull v. State Farm Fire & Cas. Co.*, 184 N.E.3d 203, 221 (Ill. 2021). This same issue has repeatedly been identified by federal courts as "a common question well suited to class wide resolution." *Stuart v. State Farm Fire & Cas. Co.,* 910 F.3d 371, 375 (8th Cir. 2018); *see also Hicks*, 965 F.3d at 459; *Arnold v. State Farm Fire & Cas. Co.*, 2020 WL 6879271, at *5 (S.D. Ala. Nov. 23, 2020) ("[C]ommonality is easily satisfied" where "overarching issue … is whether State Farm breached its agreements

with policyholders by improperly withholding labor depreciation …. All of the policies … cover property located in Alabama, and thus Alabama law applies uniformly."); *Mitchell v. State Farm Fire & Cas. Co.*, 327 F.R.D. 552, 561 (N.D. Miss. 2018), *aff'd by Mitchell v. State Farm Fire & Cas. Co.*, 954 F.3d 700 (5th Cir. 2020).

Indeed, courts repeatedly find that common issues predominate in cases challenging insurers' withholding of labor costs as depreciation under the terms of standard-form insurance policies. *Mitchell*, 954 F.3d at 711-12 (district court did not abuse its discretion in finding predominance where overarching issue was whether insurer breached its contracts by depreciating labor costs); *Stuart,* 910 F.3d at 375-78 (same); *Hicks*, 2019 WL 846044, at *5-6 (same); *Arnold*, 2020 WL 6879271, at *8 (same).

Finally, in addition to the labor withholdings themselves, Class Members' entitlement to statutory prejudgment interest also continues to present a common issue. Commonality is thus easily satisfied.

### 3. *Typicality*

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). A putative class satisfies typicality "if the named representative's claims have the same characteristics as the claims of the class at large." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006). In other words, typicality is satisfied where the class consists of "individuals who were all subject to the same conduct, and each representative's claim would be based on the same legal theory and governed by the same law." *Shurland v. Bacci Cafe & Pizzeria on Ognden, Inc.*, 259 F.R.D. 151, 159 (N.D. Ill. 2009) (Pallmeyer, J.)

Here, Plaintiffs' claims for breach of contract arising from the underpayment of their ACV claims, which they contend violate the terms of their standard-form contracts, are identical to the claims of the class and are thus typical. The additional claims for prejudgment interest are likewise identical for Plaintiffs and the Settlement Class Members. Typicality is therefore satisfied. *See Arnold*, 2020 WL 6879271, at *5; *Mitchell*, 327 F.R.D. at 561-62; *Hicks*, 2019 WL 846044, at *4.

### 4. *Adequacy*

Rule 23(a)(4) requires a showing that the "representative parties will fairly and adequately represent the interests of the class." FED. R. CIV. P. 23(a)(4). The adequacy requirement is "relatively modest" and is satisfied where two requirements are met – (1) plaintiffs' counsel are qualified and competent to conduct the litigation; and, (2) the plaintiffs' interest are aligned with, and not antagonistic to, the class members. *Shurland*, 259 F.R.D. at 159. As to the first adequacy requirement, Plaintiffs retained counsel experienced in class actions and insurance law, including labor depreciation class actions. Dkt. 49-2, at ¶¶ 4-10; Dkt. 49-3, at ¶¶ 2-11. Indeed, the Court previously approved counsel as class counsel in this case. Dkt. 57. As to the second adequacy requirement, Plaintiffs' interests are perfectly aligned with the Settlement Class, as they seek to maximize each Settlement Class Member's recovery of compensatory damages and prejudgment interest resulting from GNY's allegedly improper withholding of labor costs as depreciation in the calculation of ACV. *See Hicks*, 2019 WL 846044, at *5. The adequacy requirement is therefore satisfied.

Accordingly, all the requirements of Rule 23(a) remain satisfied.

### B. The Settlement Class Continues to Meet The Requirements Of Rule 23(b).

To qualify for certification under Rule 23(b)(3), a settlement class must meet two requirements beyond the Rule 23(a) prerequisites: common questions must predominate over any

questions affecting only individual members, and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy. FED. R. CIV. P. 23(b)(3); *see generally Amchem Prods. Inc.*, 521 U.S. at 615. In a settlement class situation, the Court does not inquire whether the "case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id.* at 620.

### 1. Predominance

"Predominance 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Id.* at 623. Predominance is generally satisfied where "adjudication of questions of liability common to the class will achieve economies of time and expense." *Heard v. Becton, Dickinson & Co.*, 524 F. Supp.3d 831, 849 (N.D. Ill. 2021) (Pallmeyer, J.) (*quoting Comcast Corp. v. Behrend*, 569 U.S. 27, 41 (2013)). A plaintiff must show that the common issue or issues applicable to the class as a whole predominate over those issues subject to only individualized proof.

Here, as in other labor depreciation cases, such as *Arnold*, "predominance is satisfied because the pertinent issue to every putative class member is whether [Defendant] breached the standard-form insurance policy by withholding labor depreciation when calculating ACV payments. Furthermore, … resolution of the central policy interpretation issues will materially advance the litigation for all class members." *Arnold*, 2020 WL 6879271, at *8-9.

As relevant here, federal courts have repeatedly found that common issues predominate in cases challenging insurers' withholding of labor costs as depreciation under the terms of standard-form insurance policies. *See id.* at *8 ("[I]n jurisdictions where labor depreciation is unlawful, as is the case here, courts have uniformly found that common questions predominate in cases challenging insurers' depreciation of labor costs."); *see also Mitchell*, 954 F.3d at 711-12 (finding

predominance where overarching issue was whether insurer breached its contracts by depreciating labor costs); *Stuart,* 910 F.3d at 375-78 (observing "plaintiffs' [labor depreciation] claims share a common, predominating question of law" that is "well suited to classwide resolution"); *Hicks*, 2019 WL 846044, at *5-6 ("Courts in jurisdictions where labor depreciation has been found to be unlawful have uniformly found that common issues predominate ….").

   *2. Superiority*

Rule 23(b)(3) also requires that a class action be superior to other available methods of fairly adjudicating the controversy. FED. R. CIV. P. 23(b)(3). The superiority of class certification over other available methods is measured by consideration of four factors: (1) the class members' interest in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and, (4) the likely difficulties of managing a class action. FED. R. CIV. P. 23(b)(3)(a)-(d). Ultimately, the goal of the superiority requirement is to ensure that a "class action will achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated . . . ." *Amchem Prods. Inc.*, 521 U.S. at 615.

All of the superiority factors continue to favor certification. Here, resolving this case in this forum will continue to achieve economies of time, effort, and expense by resolving the claims at issue in one fell swoop. Moreover, there is no known pending litigation concerning the issues in this case, this forum is an appropriate forum to adjudicate this case, and there are no likely difficulties in managing this case. Accordingly, all the requirements of Rule 23 are satisfied.

## V.     THE SETTLEMENT MERITS FINAL APPROVAL

### A.     The Court Should Grant Final Approval Because The Settlement Still Satisfies The Requirements Of Rule 23 And Applicable Precedent.

Rule 23(e) sets forth the factors that determine whether a court should approve a class action settlement. *See* FED. R. CIV. P. 23(e)(1)-(2). The Rule 23(e) factors discussed below warrant final approval of this settlement as this settlement is "fair, reasonable and adequate." FED. R. CIV. P. 23(e)(2).

Under Rule 23(e)(2), a court may only approve a settlement based on a finding that the proposed settlement is "fair, reasonable and adequate" after considering whether:

(A)     the class representatives and class counsel have adequately represented the class;
(B)     the proposal was negotiated at arm's length;
(C)     the relief provided for the class is adequate, taking into account:
    (i)     the costs, risks, and delay of trial and appeal;
    (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
    (iii)     the terms of any proposed award of attorney's fees, including timing of payment; and
    (iv)     any agreement required to be identified under Rule 23(e)(3); and
(D)     the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2); *see generally Wong v. Accretive Health*, 773 F.3d 859, 862 (7th Cir. 2014).

When considering these factors, the Court should keep in mind the presumption in favor of finding a class action settlement fair. *See generally Young v. Rolling the Dough, Inc.*, 2020 WL 969616, at *3 (N.D. Ill. Feb. 27, 2020) (*quoting Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)). "The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals. Settlement is generally favored because it represents a compromise reached between the parties to the suit and relieves them, as

well as the judicial system, of the costs and burdens of further litigation." NEWBERG § 13:44. As set forth in detail below, consideration of the Rule 23(e) factors supports final approval here.

**B.  The Settlement Achieves An Excellent Result For The Class.**

*1.  The Adequacy Of Representation*

As discussed earlier, Plaintiffs and Class Counsel continue to adequately represent the class. Plaintiffs were active in the litigation of this case by corresponding with counsel, providing necessary records and attending mediation. Moreover, Class Counsel in this lawsuit are also putative or certified class counsel in a majority of the pending and resolved labor depreciation class actions throughout the United States. They have decades of experience in insurance, class actions and complex litigation, including litigating similar labor depreciation claims before this Court. *See* Dkt. 49-2, at ¶¶ 4-10; Dkt. 49-3, at ¶¶ 2-9. Moreover, some of Class Counsel are the same counsel who successfully litigated *Sproull.* Plaintiffs' Counsel additionally succeeded in securing a settlement with extraordinary relief against a formidable opponent. The "adequacy of representation" factor remains satisfied.

*2.  The Settlement Was Negotiated At Arm's Length*

"A 'presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp, Inc. v. ACA INA Holdings, Inc.*, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012). Here, the parties began settlement discussions after GNY provided extensive data regarding the claims made during the class period, including claims that were not part of the class. Dkt. 49-2, at ¶ 18. Moreover, the essential terms of the settlement were achieved after two mediations before a retired federal magistrate judge. *Id.* at ¶¶ 19-24; *see generally In re Navistar MaxxForce Engines Mktg., Sales Practices &Prods. Liab. Litig.*, 2020 WL 2477955, at *3 (N.D.

Ill. Jan. 21, 2020) (finding settlement was negotiated at arm's length when mediated by a retired federal judge).

Moreover, relief to the class was negotiated and agreed upon before any negotiations concerning the requested attorneys' fees, costs and service awards occurred. *See* Dkt. 49-2, at ¶¶ 19-24. The Court previously found that the settlement was "negotiated at arm's length" and that remains true. Dkt. 57, p. 2.

### 3. The Relief Provided To The Settlement Class Is Exceptional.

The relief provided to the Settlement Class is excellent. Settlements in which class members are entitled to receive 100% or more of their claimed damages are both rare and exceptional. *See, e.g., Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1062 (D. Minn. 2010) ("Settlement Class Members who file timely and otherwise valid claims will receive *100%* of their claimed damages—*a percentage almost unheard of in class-action litigation*"). Here, each class member who submits a valid claim will not only receive **100%** of their non-material depreciation withheld by GNY, but they will also receive 5% interest accruing from the date of the last ACV payment through the date of final judgment. SA ¶¶ 4.1.1, 6.4. The class members who submit claims are effectively receiving an amount close to their best day in court, without the burden of trial. Indeed, the average Settlement Class Member who submits a valid claim will receive approximately **$15,000**. Roberts Decl. ¶¶ 5-8.

### a. The Complexity, Expense And Likely Duration Of The Litigation

This factor requires the Court to compare the immediate benefits and risks of the proposed settlement against the mere possibility of future relief given the uncertainties of protracted and expensive litigation. "In this respect, '[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush.'" *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 303 (S.D.

Miss. 2014). Indeed, "[i]f the Court approves the Agreement, the present lawsuit will come to an end and Class Members will realize [] immediate [] benefits as a result. If the Court denies approval, however, protracted litigation would likely ensue." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (granting final approval of class settlement).

"It is common knowledge that class action suits have a well deserved reputation as being most complex." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Labor depreciation class actions are particularly complex and slow moving due to the increased likelihood of interlocutory appeals via state supreme court "question certification" laws, 28 U.S.C. § 1292(b) and/or Federal Rule of Civil Procedure 23(f). For example, the *Sproull* case took more than six years to litigate to a conclusion. Other labor depreciation cases have fared the same. *See generally Mitchell v. State Farm Fire & Cas. Co.*, No. 17-00170 (N.D. Miss.) (pending for nearly three-and-a-half years and after a Fifth Circuit appellate decision).

The instant lawsuit thus could have continued for several additional years through trial and subsequent appeals absent settlement. Experts in the claims estimating and claims data would have been disclosed as experts. Discovery disputes would likely arise. Counsel for both parties included national class action practice attorneys. Ultimately, the settlement should be approved as it "allows the class to avoid the inherent risk, complexity, time and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011).

*b. Class Members Have A Simple Way To Receive Compensation.*

Under Rule 23(e)(2)(C)(ii), the Court also considers "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." FED. R. CIV. P. 23(e)(2)(C)(ii). This factor is particularly concerned with "methods of processing claims so complex that they discourage class members from pursuing valid claims."

*T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943, at *14 (N.D. Ill. Mar. 25, 2022). Here, the claims process is straight-forward. A Settlement Class Member simply needs to provide their name, fill out their address and sign the claim form. Moreover, the claim form can be submitted via mail or uploaded on the settlement website. SA, ¶¶ 5.7, 6.2. A request that a claimant submit a claim form that requires "claimants to provide their names, addresses, and signature" does not raise concerns with the claims process. *T.K. Through Leshore*, 2022 WL 888943, at *14.

### c. The Stage Of Proceedings

The Court's consideration of the stage of proceedings and the nature and extent of discovery in evaluating the fairness of a settlement is focused on whether the parties have obtained sufficient information to evaluate the merits of competing positions. That said, courts "encourage parties to settle class actions early, without expending unnecessary resources." *Ivery v. RMH Franchise Corp.*, 2019 WL 13256098, at *1 (N.D. Ill. July 10, 2019). The parties here engaged in significant informal discovery, involving the production of electronic claims data for structural damage claims during the relevant class period. *See* Dkt. 49-2, at ¶ 18. Class Counsel were therefore well positioned to intelligently assess the merits of the lawsuit and damage information.

### d. The Strength Of Plaintiffs' Case And The Value Of The Settlement

A critical factor in the fairness inquiry is the court balancing "the strength of the merits of Plaintiffs' case against the value that they will receive from this settlement." *In re TikTok, Inc. Consumer Privacy Litig.*, 617 F. Supp. 3d 904, 933 (N.D. Ill. July 28, 2022). While the Illinois Supreme Court's holding in *Sproull* certainly strengthens Plaintiffs' case, success was not a guarantee. While the labor depreciation litigation classes referenced above have been initially certified for contractual claims as in the case here, no labor depreciation class action has ever gone to trial or faced the issue of decertification.

The available recovery by eligible class members of 100% of the Nonmaterial Depreciation withheld from their ACV payments, plus 5% interest from the date of the initial ACV payment through the date of Final Judgment, reflect the strong value of these claims.[7] Finally, GNY has agreed to pay a service award, attorneys' fees, case expenses, and settlement administration costs of up to $50,000.00 (which ended up totaling $19,694)[8] *in addition to* Class Members' recoveries. These terms are very favorable.

      *e. The Opinions Of Class Counsel And The Class Representatives, And The Reaction Of Class Members*

"The opinion of competent counsel is relevant to the question whether a settlement is fair, reasonable and adequate under Rule 23." *Schulte*, 805 F. Supp. 2d at 586. Here, Class Counsel strongly recommend the settlement. *See* Roberts Decl. ¶¶ 9-29. Moreover, the members of the Settlement Class Members appear to approve of the settlement as no class members have objected or opted out of the settlement. Bridley Decl. ¶¶ 15-16.

### C. The Court Should Award Plaintiffs' Requested Attorneys' Fees, Costs, and Service Award.

      *1. The Requested Attorneys' Fees and Costs are Reasonable and Should be Approved.*

The Settlement Agreement provides that Class Counsel will seek $557,500.00 in attorneys' fees, costs and litigation expenses. SA, ¶¶ 4.1.2, 13.1. GNY has agreed to pay this amount. Class Members' payments **<u>will not be reduced</u>** by payment of attorneys' fees. Named Plaintiffs also

---

[7] *See, e.g., Bennett v. Behring Corp.*, 737 F.2d. 982, 986-87 & n.9 (11th Cir. 1984) (affirming settlement approval in which class fund represented 5.6% of potential recovery); *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1250-51 (S.D. Fla. 2016) (approving settlement that obtained 20% the amount sought at trial and "guarantees that each Class member who files a claim will receive a recovery of up to 50% of his or her individual damages").

[8] Bridley Decl. ¶ 20.

seek a total service award in the amount of $10,000, which if approved, will **not** reduce the Class Members' recoveries. The Class Members received notice of these requested amounts, and no class members objected to said amounts. Bridley Decl. ¶¶ 15-16, Declaration Exs. B and C. The complete lack of opposition to these amounts supports the requested fees. *Douglas v. W. Union Co.*, 328 F.R.D. 204, 215 (N.D. Ill. 2018) (recognizing "[t]his extremely low percentage of opposition favors finding that the settlement is fair, reasonable, and adequate[,]" including the requested attorneys' fees); *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 197 (N.D. Ill. 2018) (similar holding).

The parties estimate the aggregate value of the relief made available to the class for payment on a claims made basis is approximately $1.5 million for claims. In addition GNY has agreed to pay the costs of administration of $19,694.00, the proposed service award of $10,000.00, and attorneys' fees and expenses of $557,500.00. The total benefit to the class excluding the cost of administration is $2,057,500 (*i.e.*, fees plus $1.5 million). Thus, the fees are 27% of the total benefit to the class. This is below the typical percentage of recovery. *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 201-02 (N.D. Ill. 2018) (noting a "typical contingency agreement in this circuit might range from 33% to 40% of recovery").

Plaintiffs' requested fees are in accord with fees awarded in other class cases generally, and labor depreciation class actions, specifically. *See* Dkt. 49-2 (Decl. Ex. A, identifying various "claims made" labor depreciation class settlements). In Illinois, such awards commonly fall between a lower end of 20% and an upper end of 50%. *See Spicer v. Chicago Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1252 (N.D. Ill. 1993) (citing case law that supports a range of 20 to 50%); *see also Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 201-02 (N.D. Ill. 2018) (A "typical contingency agreement in this circuit might range from 33% to 40% of recovery."); *Martin v.*

*Caterpillar Inc.*, 2010 WL 11614985, at *2 (C.D. Ill. Sept. 10, 2010) (noting a typical contingent fee is between 33 and 40 percent.); *In re Abbott Labs. Sec. Litig.*, 1995 WL 792083, at *11 (N.D. Ill. July 3, 1995) (holding data demonstrating fee awards in the range of 30% to 50% in similar cases "provides considerable comfort that the requested fee of 30.76% of the recovery falls within a reasonable range"); *McCormick v. Adtalem Glob.Educ., Inc.*, 2022 IL App (1st) 201197-U, ¶¶ 29, 32 (noting "Illinois state and federal court cases in which attorney fees were awarded in the 30-to-39% or higher range"; affirming attorneys' fee award of 35% of total benefit made available to the class).

Moreover, because the attorneys' fees **will not reduce** any class member's recovery and the attorneys' fees are to be paid "*over and above* the settlement costs and benefits with no reduction of class benefits," agreements between plaintiffs' and defense counsel as to the amount of fees "are *encouraged*, particularly where the attorneys' fees are negotiated separately and only after all the terms have been agreed to between the parties." *Manners v. Am. Gen. Life Ins. Co.*, No. 3-98-0266, 1999 WL 33581944, *28-30 (M.D. Tenn. Aug. 11, 1999); *see, e.g.,* Mem. Op. and Order at ¶¶ 28-31, *Arnold v. State Farm Fire & Cas. Co.*, No. 2:17-cv-148-TFM-C (S.D. Ala. Oct. 4, 2022) (*Arnold* Dkt. 206) (approving class counsels' fee request in Alabama labor depreciation class action where "the attorneys' fees, costs, and expenses will be paid 'over  and above' the amounts paid to class members"); *Bailey v. AK Steel Corp.*, No. 1:06-468, 2008 WL 553764, at *1 (S.D. Ohio Feb. 28, 2008) ("[C]ourts are especially amenable to awarding negotiated attorneys' fees and expenses in a reasonable amount where that amount is in *addition to and separate from* the defendant's settlement with the class."). Indeed, courts have held that these "over and above" fee requests are entitled to a "presumption of reasonableness." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 322-33 (W.D. Tex. 2007); *see also Cole v. Collier*, 2018 WL 2766028, at *13 (S.D.

Tex. June 8, 2018) ("When the amount of fees is agreed upon, is separate and apart from the class settlement, and has been negotiated after the other terms have been agreed, the attorneys' fee is presumed to be reasonable.").

The reasoning of these courts is twofold. First, any hypothetical judicial reduction of an "over and above" fee request upon final approval would only benefit the insurance companies that breached their contracts—not any class members. *E.g.*, *DeHoyos*, 240 F.R.D. at 322 ("Were the Court to reduce the award of class counsel's fees, this would not confer a greater benefit upon the class, but rather would only benefit Allstate."); *accord Lane v. Page*, 862 F. Supp. 2d 1182, 1258 (D.N.M. 2012) ("Even if the Court were to reject the attorney's fees arrangement, the funds would not go to the class and would not increase the class fund in any way."). Second, "where the money paid to attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no potential conflict of interest between attorneys and class members." *Mirakay v. Dakota Growers Pasta Co.*, 2014 WL 5358987, at *11 (D.N.J. Oct. 20, 2014).[9] Coupled with the outstanding results in this case, the "over and above" requested fees and costs of $557,500.00 should be deemed fair and reasonable.

---

[9] *Accord Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 245 (E.D.N.Y. 2010) ("As a threshold matter, the Court notes that the requested attorneys' fees in this case will not be drawn from a common fund, but rather will be paid directly by defendant. Whatever attorneys' fees are awarded, therefore, will in no way diminish the benefit to the class under the Settlement, which the Court has already found fair, reasonable, and adequate. Furthermore, the issue of attorneys' fees was not raised during the Settlement negotiations until after the parties had already agreed upon the benefit to the class. Therefore, the Court's fiduciary role in overseeing the award is greatly reduced."); *Bezio v. Gen. Elec. Co.*, 655 F. Supp. 2d 162, 168 (N.D.N.Y. 2009) ("If [ ] money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members."); *In re Sony SXRD Rear Projection TV Class Action Litig.*, 2008 U.S. Dist. LEXIS 36093, at *43 (S.D.N.Y. May 1, 2008) ("[T]he danger of conflicts of interest between attorneys and class members is diminished... the fee was negotiated only after agreement had been reached on the substantive terms of the Settlement benefitting the class."); *McBean v. City of New York*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006) ("If money paid to the attorneys comes

When considering the appropriateness of a fee award, it is also relevant to consider the probability of success at the outset of the litigation and the risks that counsel undertook in pursuing it. *See Taubenfeld v. AON Corp.*, 415 F.3d 597, 600 (7th Cir. 2005). Here, Plaintiffs' counsel accepted this litigation on a contingent-fee basis, fronting all the costs and expenses associated with the litigation, foregoing other work, and accepting the risk that should they be ultimately unsuccessful, they would receive no compensation for their work. Moreover, without the willingness of Plaintiffs' counsel to assume the risks inherent in this case (or in other cases of similar magnitude and complexity), Class Members would not have recovered anything, let alone the substantial recovery secured here. The public interest is thus served by awarding compensation in an amount appropriate to encourage skilled attorneys to assume the risks of this type of litigation.

Although the tides have turned, when Plaintiffs' counsel filed this case "the substantial weight of authority" was *against* policyholders throughout the United States. *Hicks v. State Farm Fire & Cas. Co.*, 751 F. App'x 703, 710 (6th Cir. 2018); *see, e.g., In re State Farm Fire & Cas. Co. (LaBrier)*, 872 F.3d 567 (8th Cir. 2017) (reversing certification of State Farm labor depreciation class and concluding labor may be depreciated under Missouri law); *Brasher v. Allstate Indemnity Co*., 2020 WL 4672259 (N.D. Ala. August 12, 2020) (denying class certification in Alabama labor depreciation case because the plaintiff did not submit data isolating the amount of labor depreciation damages he was seeking during the certification briefing process).

---

from a common fund, and is therefore money taken from the class, then the Court must carefully review the award to protect the interests of the absent class members. If, however, money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members.").

At the time this case was filed, the Illinois Supreme Court had not yet addressed the labor depreciation merits question under Illinois law, and no Illinois state or federal court has determined the propriety of class certification of an Illinois labor depreciation class. Accordingly, heading into this case, Plaintiffs' counsel confronted these issues without any assurances as to how this Court or, ultimately, the Illinois Supreme Court, would rule. Plaintiffs' counsel accepted the case and the risks that accompanied it. Given the positive societal benefits to be gained from attorneys' willingness to undertake this kind of difficult and risky, yet important, work, such decisions should be incentivized. *See, e.g., In re Trans Union Corp. Privacy Litig.*, 629 F. 3d 741, 746 (7th Cir. 2011) ("[W]ithin the set of colorable legal claims, a higher risk of loss does argue for a higher fee.").

GNY retained experienced litigators in Alexander Bialk and Matthew Ponzi from Foran Glennon. Absent settlement, defense counsel would have continued to put forward several grounds for avoiding both liability and class certification. Given the foregoing, the complexity and risks inherent in the litigation support further the requested fee.

> ### 2. *A Service Award Should be Awarded to the Class Representatives For Their Efforts In Assisting Class Counsel In Prosecuting This Action.*

Finally, the $10,000 service award sought here is consistent with awards in this Court and those approved in other labor depreciation class actions. *See, e.g., Castillo v. Noodles & Co.*, 2016 WL 7451626, at *2 (N.D. Ill. Dec. 23, 2016) (awarding $10,000.00 class representative service award); Final Order and Judgment at ¶ 40, *Mitchell v. State Farm Fire & Cas. Co.*, No. 17-00170-MPM-RP (N.D. Miss. Feb. 25, 2021) (*Mitchell* Dkt. 249) (awarding $15,000 service award to class representative in labor depreciation class action); Final Order and Judgment at ¶ 22, *Wade v. Foremost Ins. Co.,* No. 18-02120-JPM (W.D. Tenn. July 6, 2020) (*Wade* Dkt. 106) (approving $15,000 service award in labor depreciation class action).

Further, the proposed class representatives, Danshir, LLC and Danshir Property Management, LLC, obtained an excellent result which will pay each Settlement Class Member who submits a claim an average of over $15,000. Plaintiffs' willingness to serve as class representatives, to stay updated on the case, and to provide necessary information and records, was critical to the litigation. In short, the requested fees, expenses and representative service award are reasonable and should be approved.

## V.    CONCLUSION

The relief afforded in this case is outstanding and relatively unheard of in class action cases. The average payment per class member is likewise remarkable. Given the presence of skilled counsel for both parties, the complexity of facts and law at issue, the further substantial expense if this action were to continue, the risks attendant to continued litigation, the present benefit of the settlement, and the arm's-length negotiations leading to settlement, the Court should find that the Settlement is fair, reasonable, and adequate and enter judgment accordingly, and also approve Class Counsel's requested attorneys' fees and a representative service award.

Dated:  October 19, 2023

By: */s/ Christopher E. Roberts*
David T. Butsch #6205434
Christopher E. Roberts #6302857
BUTSCH ROBERTS & ASSOCIATES LLC
7777 Bonhomme Ave., Suite 1300
Clayton, MO 63105
Tel: (314) 863-5711
butsch@butschroberts.com
roberts@butschroberts.com

and

James X. Bormes #6202568
Catherine P. Sons #6290805
LAW OFFICE OF JAMES X. BORMES, P.C.
8 South Michigan Avenue, Ste. 2600
Chicago, Illinois 60603
Tel: (312) 201-0575
bormeslaw@sbcglobal.net
cpsons@bormeslaw.com

and

T. Joseph Snodgrass #6319907
SNODGRASS LAW LLC
100 S. Fifth Street, Suite 800
Minneapolis, MN 55402
Tel: (612) 448-2600
jsnodgrass@snodgrass-law.com

*Attorneys for Plaintiffs and*
*Putative Class Representatives*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 19, 2023, a copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/ Christopher E. Roberts